James E. Magleby (7247)
  magleby@mcg.law
Jennifer Fraser Parrish (11207)
  parrish@mcg.law
MAGLEBY CATAXINOS & GREENWOOD, PC
141 West Pierpont Avenue
Salt Lake City, Utah 84101
Tel.: (801) 359-9000
Fax: (801) 359-9011

Ben Barnow*
  b.barnow@barnowlaw.com
Anthony L. Parkhill*
  aparkhill@barnowlaw.com
Riley W. Prince*
  rprince@barnowlaw.com
BARNOW & ASSOCIATES, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
*Pro Hac Vice application to be submitted

Attorneys for Plaintiff Elliot Bohler
 and the Proposed Class

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| ELLIOT BOHLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>C.R. ENGLAND, INC.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br><br>Case No. 2:22-cv-396<br><br>Honorable Jared C. Bennett |

## CLASS ACTION COMPLAINT

Plaintiff Elliott Bohler ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendant C.R. England, Inc. ("C.R. England"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

1

**INTRODUCTION**

1. Plaintiff brings this class action against C.R. England for its failure to secure and safeguard his and approximately 224,572 other individuals' private and confidential personally identifiable information ("PII"), including names, addresses, Social Security numbers, and dates of birth.

2. C.R. England is a corporation with its principal place of business in Salt Lake City, Utah. The company provides trucking services and specializes in temperature-controlled carrying.

3. On or about October 30, 2021, unauthorized individuals gained access to C.R. England's network systems and accessed files from the system that contained the PII of Plaintiff and Class members (the "Data Breach").

4. C.R. England owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. C.R. England breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect its members' and former members' PII from unauthorized access and disclosure.

5. As a result of C.R. England's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach, which C.R. England first publicly acknowledged on or about May 23, 2022.

6. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, breach of implied contract, and violation of the North Carolina Unfair and Deceptive

Trade Practices Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

7. Plaintiff Elliott Bohler is a North Carolina resident. He provided his PII to C.R. England in connection with employment with C.R. England. Plaintiff Bohler received a letter from C.R. England notifying him that his PII was accessed in the breach. Had Plaintiff known that C.R. England does not adequately protect PII, he would not have sought employment from C.R. England and would not have agreed to provide C.R. England with his PII.

8. Defendant C.R. England, Inc. is a Utah corporation and has its principal place of business in Salt Lake City, Utah. C.R. England's corporate headquarters are located at 4701 W 2100 S Salt Lake City, Utah 84120.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over C.R. England because C.R. England has its principal place of business in Utah.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because C.R. England's principal place of business is located in Salt Lake City, Utah.

## FACTUAL ALLEGATIONS

### *Overview of C.R. England*

12. C.R. England was founded in 1920 and provides "a comprehensive range of transportation solutions."[1] In addition, the company has five driver training schools throughout the United States.

13. In the regular course of its business, C.R. England collects and maintains the PII of its employees and former employees.

14. On its website, C.R. England has a Privacy Policy that is applies to online and recruiting related practices. The Privacy Policy states, "C.R. England recognizes the importance of protecting information and data we collect from you. We have put in place reasonable electronic and other procedures to help safeguard the information and data you provide to us from unauthorized access and unauthorized disclosure, subject to the terms and conditions of this Privacy Policy."[2]

15. Plaintiff and Class members are, or were, employees of C.R. England, and entrusted C.R. England with their PII.

### *The Data Breach*

16. On or about October 30, 2021, an unauthorized individual, or unauthorized individuals, gained access to C.R. England's network systems and accessed files on C.R. England's computer systems.

17. C.R. England did not begin to notify Plaintiff and Class members about the Data

---

[1] *About Us*, C.R. ENGLAND, https://www.crengland.com/about-us (last accessed June 6, 2022).

[2] *Privacy Policy*, C.R. ENGLAND, https://www.crengland.com/about-us/privacy-policy (last accessed June 6, 2022).

4

Breach until almost seven months after the Data Breach occurred, on or about May 23, 2022. The letter that Plaintiff Bohler received from C.R. England states that the information that the cybercriminal accessed includes an individual's "name, address, date of birth, and Social Security number." *See* Exhibit A, Notification Letter.

### *C.R. England Knew that Criminals Target PII*

18. At all relevant times, C.R. England knew, or should have known, its employees, former employees, Plaintiff's, and all other Class members' PII was a target for malicious actors. Despite such knowledge, C.R. England failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from cyber-attacks that C.R. England should have anticipated and guarded against.

19. PII is a valuable property right.[3] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[4] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[5] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

---

[3] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data

[4] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[5] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

20. As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, SSNs, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

21. Consumers place a high value on the privacy of that data. Researchers have shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[6]

22. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### *Theft of PII Has Grave and Lasting Consequences for Victims*

23. Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[7]

24. Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[8] According to Experian, one of the

---

[6] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[7] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed May 26, 2022).

[8] The FTC defines identity theft as "a fraud committed or attempted using the identifying

largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[9]

25. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[10]

26. Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

27. Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to

---

information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

[9] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (Sept. 1, 2017), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[10] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed May 26, 2022).

7

find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[11]

28. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used and it takes some individuals up to three years to learn that information.[12]

29. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and the Other Class Members*

30. Plaintiff and all other Class members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

---

[11] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[12] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

## CLASS ALLEGATIONS

31. This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

32. Plaintiff brings this action on behalf of himself and all other members of the following Class of similarly situated persons:

> All persons whose PII was accessed by unauthorized persons in the Data Breach, including all persons who were sent a notice of the Data Breach.

33. Excluded from the Class is C.R. England, Inc. and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

34. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. C.R. England reported to the Maine Attorney General that approximately 224,572 individuals' information was exposed in the Data Breach.

36. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a. Whether C.R. England had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

   b. Whether C.R. England failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

9

    c. Whether an implied contract existed between Class members and C.R. England providing that C.R. England would implement and maintain reasonable security measures to protect and secure Class members' PII from unauthorized access and disclosure;

    d. Whether C.R. England breached its duties to protect Plaintiff's and Class members' PII; and

    e. Whether Plaintiff and all other members of the Class are entitled to damages and the measure of such damages and relief.

37. C.R. England engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

38. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by C.R. England, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

39. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

40. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against C.R. England, so it would be impracticable for Class members to individually seek redress from C.R. England's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## **CAUSES OF ACTION**

### **COUNT I**
### **NEGLIGENCE**

41. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

42. C.R. England owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

43. C.R. England's duties arise from, *inter alia*, Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as C.R. England, of failing to employ reasonable measures to protect and secure PII. Plaintiff and Class members are the persons that the Section 5 of the FTCA was intended to protect and the harm that Plaintiff and Class members suffered is the type of harm Section 5 of the

11

FTCA intended to guard against.

44.  C.R. England knew the risks of collecting and storing Plaintiff's and Class members' PII and the importance of maintaining secure systems. C.R. England knew of the many data breaches that targeted companies that stored PII in recent years.

45.  Given the nature of C.R. England's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, C.R. England should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

46.  C.R. England breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

47.  It was reasonably foreseeable to C.R. England that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

48.  But for C.R. England's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

49.  As a result of C.R. England's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered, and will continue to suffer, economic damages and other injury and

actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

## COUNT II
## BREACH OF IMPLIED CONTRACT

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

51. In connection with being employed by C.R. England, Plaintiff and all other Class members entered into implied contracts with C.R. England.

52. Pursuant to these implied contracts, Plaintiff and Class members provided C.R. England with their PII in order to obtain employment from C.R. England. In exchange, C.R. England agreed to, among other things, and Plaintiff understood that C.R. England would: (1) provide employment to Plaintiff and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (3) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations and industry standards.

53. The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and C.R. England, on the other hand. Indeed, C.R. England was clear in its Privacy Policy, and Plaintiff understood, that C.R. England supposedly respects and is committed to protecting employees' privacy.

13

54. Had Plaintiff and Class members known that C.R. England would not adequately protect its employees' and former employees' PII, they would not have provided C.R. England with their PII.

55. Plaintiff and Class members performed their obligations under the implied contracts when they provided C.R. England with their PII.

56. C.R. England breached its obligations under their implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

57. C.R. England's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

58. Plaintiff and all other Class members were damaged by C.R. England's breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

**COUNT III**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C.G.S. §§ 75-1.1, *et seq.* ("NCUDTPA")**

59. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

60. The NCUDTPA states, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a).

61. The services and employment that C.R. England provides are commerce within the meaning of N.C.G.S. § 75-1.1(a).

62. C.R. England made representations to Plaintiff and the Class members that their information would remain confidential, particularly in its Privacy Policy.

63. C.R. England did not disclose to Plaintiff and Class members that its data security was inadequate.

64. C.R. England violated the NCUDTPA through its failure to adequately safeguard and maintain Plaintiff and Class members' PII.

65. As a result of C.R. England's above-described conduct, Plaintiff and the Class have suffered damages from the disclosure of their information to unauthorized individuals.

66. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of C.R. England's violations of the NCUDTPA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of

the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; (vi) overpayment for the services that were received without adequate data security.

67. Plaintiff, individually, and for each member of the Class, seeks treble damages for their injuries pursuant to N.C.G.S. § 75-16 and attorneys' fees, litigation expenses and court costs pursuant to N.C.G.S. § 75-16.1.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his and the Class's favor and against C.R. England as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's designated counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent C.R. England from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.  Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.  Awarding Plaintiff and the Class such other favorable relief as allowable under law.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 15, 2022

Respectfully submitted,

/s/ Jennifer Fraser Parrish
James E. Magleby (7247)
 magleby@mcg.law
Jennifer Fraser Parrish (11207)
 parrish@mcg.law
MAGLEBY CATAXINOS & GREENWOOD, PC
141 West Pierpont Avenue
Salt Lake City, Utah 84101
Tel.: (801) 359-9000
Fax: (801) 359-9011

Ben Barnow*
 b.barnow@barnowlaw.com
Anthony L. Parkhill*
 aparkhill@barnowlaw.com
Riley W. Prince*
 rprince@barnowlaw.com
BARNOW & ASSOCIATES, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504

*Pro Hac Vice application to be submitted